UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

TAJAE R. M.,[1]

Petitioner,

v.

MARKWAYNE MULLENS, et al.,

Respondents.

No. 1:26-cv-02738-JLT-FJS

FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND DIRECT RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER

(ECF No. 1)

FOURTEEN (14) DAY DEADLINE

Petitioner Tajae R. M. ("Petitioner") is a noncitizen whom immigration authorities released on parole on January 8, 2025, under 8 U.S.C. § 1226(a), but then re-detained on February 3, 2026. On April 10, 2026, Petitioner filed the instant habeas petition along with a

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

motion for temporary restraining order. (ECF Nos. 1, 5.) On April 11, 2026, the court denied Petitioner's temporary restraining order as untimely. (ECF No. 7.) The court set a briefing schedule and the matter was referred to the undersigned for further proceedings including preparation of findings and recommendations on the petition or other appropriate action. (ECF No. 7.)

On May 5, 2026, Respondents answered the habeas petition. (ECF No. 10.) On June 3, 2026, Petitioner filed his traverse. (ECF No. 15.)

## I. FACTUAL BACKGROUND

Petitioner, a citizen of Jamaica, entered the United States with an H2B visa in May 2017 and worked in the United States at Howard Johnson. (ECF No. 1 at 10.) Petitioner was previously charged with domestic violence, assault, obstructing a crime, and disorderly conduct in 2018, but the charges were dismissed in November 2019. (ECF No. 1 at 11.)

On April 1, 2024, Petitioner filed for a change of status under the Violence Against Women Act and received a prima facie determination of likely validity on November 17, 2025, under that act. (ECF No. 15 at 11.) Petitioner's self-petition (Form I-360) under the Violence Against Women Act remains pending. (ECF No. 15 at 11.) Petitioner re-entered the United States after a trip to Jamaica on January 6, 2025, with advance parole through January 5, 2026. (ECF No. 1 at 10-11.) Petitioner's parole at the port of entry was "based on urgent humanitarian reasons or significant public benefit." (ECF No. 15 at 5.) Petitioner's authorization for parole does not expire until October 2029. (ECF No. 6.)

Later, Petitioner was arrested while working for Home Depot making deliveries on February 3, 2026. (ECF No. 1 at 10; 15 at 5.) Petitioner was taken to Golden State Annex, where he now remains. (ECF No. 1 at 12.) Petitioner requested a bond hearing and an immigration judge denied bond on March 19, 2026. (ECF No. 1 at 2.) The immigration judge denied bond because Petitioner is an "arriving alien, and the Court lacks jurisdiction over his request for custody redetermination." (ECF No. 10-2 at 1.) The immigration judge further indicated that Petitioner "is both a danger and a flight risk." (*Id.*)

Petitioner has family and attachments in the United States. He shares a home with his

partner of five years, who is pregnant with his child, and stepchildren. (ECF No. 15 at 5.) Petitioner has remained employed. (ECF No. 15 at 5.)

## II. JURISDICTION AND LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A district court may grant a writ of habeas corpus when the Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)).

## III. DISCUSSION

Petitioner contends that the due process clause bars the government from re-detaining him without providing a legally adequate bond hearing where it must prove he poses a risk of flight or danger. (ECF No. 15 at 22.) As the basis for Petitioner's allegedly mandatory detention, Respondents argue that Petitioner is an "arriving alien" under 8 U.S.C. § 1182(d). (ECF No. 10 at 1-2.) Thus, before turning to the standard due process analysis, the court addresses the threshold matter of whether Petitioner's expired parole is dispositive.

### A. Expiration of Petitioner's Parole

The government argues that Petitioner's parole relegates him to the regulatory status of an "arriving alien." (ECF No. 10 at 2.) Thus, the government reasons, Petitioner "is not statutorily eligible for a bond hearing or immediate release" and is instead "subject to mandatory detention." (*Id.*) Petitioner's previous January 2025 parole is of no moment to the government because that parole "*expired* on January 6, 2026." (*Id.* at 10 at 1 (emphasis in original).) Yet "[t]he federal courts have routinely concluded that a noncitizen paroled into the United States has a due process liberty interest—as balanced in a due process analysis—that is not extinguished by parole expiration." *Baptiste v. Bondi*, No. CV 26-02586, 2026 WL 1684433, at *6 (D. Ariz. May 21, 2026) (collecting cases, including *Seyed H.H. v. Andrews*, No. 26-cv-00256, 2026 WL 253426, at

*4 (E.D. Cal. Jan. 30, 2026), and *Omer G.G. v. Kaiser*, No. 25-cv-0147, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025)). That the government granted Petitioner (1) a work authorization that expires many years after the January 2026 parole expiration, (ECF No. 6-1), and (2) an authorization for parole that, while not assuring parole would be granted, approved Petitioner for multiple applications for parole into the United States through October 2029, (ECF No. 6), cut against the government's argument that mandatory detention "is not a shift in the government's detention authority position," (ECF No. 10 at 2), at least as applied to Petitioner. *Cf. Omer G.G.*, 2025 WL 3254999, at **5-6 (holding that an immigration habeas petitioner "maintained a liberty interest in his release pending a final removal decision in his immigration case" despite the expiration of parole where, among other facts, the government issued a work authorization that extended years past parole expiration). Accordingly, the court does not find that mandatory detention under 8 U.S.C. § 1182(d) dictates dismissal of the Petition.

B. <u>Due Process</u>

The court next analyzes Petitioner's due process claim. This analysis involves "two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 25-cv-01884, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

a. <u>Petitioner Possesses a Protected Liberty Interest</u>.

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the due process clause may entitle the individual to procedural protections not found in the statute. *See id.* (holding that due process requires a pre-deprivation hearing before revoking pre-parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context); *R.A.N.O. v. Wofford*, 820 F. Supp. 3d 1094, 1105 (E.D. Cal. 2026) (same, humanitarian parole context). To determine whether a specific conditional release

rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (citation modified).

*Morrissey* held that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." 408 U.S. at 482. "Though the [government] properly subjects [parolees] to many restrictions not applicable to other citizens" (e.g., monitoring), their "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (citation modified). Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

Petitioner entered the United States on an H2B visa in 2018 where he developed "enduring attachments of normal life," 408 U.S. at 482, including friends, family, partner, house, children, stepchildren, and employment for approximately seven years. (ECF No. 15 at 5.) Petitioner left the United States for a trip to Jamaica and was paroled upon his return into the United States allowing him to live outside of custody for another year. (ECF No. 15 at 5.) The court concludes that Petitioner's original release and time out of custody gave rise to a constitutionally protective liberty interest. This finding is consistent with the holding that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, No. 25-CV-05632, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025), *quoted with emphasis in Garcia v. Andrews*, No. 25-cv-01006 JLT SAB, 2025 WL 2420068, at *7 (E.D. Cal. 2025).

Because Petitioner has a protected liberty interest in his release, *see Guillermo M. R. v. Kaiser*, No. 25-CV-05436, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due

Process Clause") (internal citations and quotations omitted) (emphasis in original); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest), the court next determines whether the government unconstitutionally infringed on that liberty interest here.

b. Constitutionality of Deprivation of Petitioner's Liberty Interest.

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in each situation may be evaluated using what have been called the three *Matthews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, Petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from Government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (evaluating 8 U.S.C. § 1231). Petitioner had been out of custody for approximately seven years and, during that time, he has lived, worked, and developed ties in the community. (ECF No. 15 at 5.) Indeed, Petitioner was working at the time of his February 2026 detention. (ECF No. 1 at 10.) Petitioner has been detained for less than six months, which is arguably not a "prolonged" time. *Cf Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207 (9th Cir. 2022) (assuming that a detention of more than six months is "prolonged"). But the sudden cessation of Petitioner's liberty interest in February 2026 despite the familial ties Petitioner made over several years of authorized presence and his legally authorized employment tips this first *Matthews* factor in Petitioner's favor.

Second, "the risk of an erroneous deprivation [of liberty] is high" where "[the Petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-

00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Although Petitioner had a bond hearing, the immigration judge ruled that Petitioner was subject to mandatory detention as an arriving alien. (ECF No. 10-2 at 1.) Thus, the court considers the immigration judge's classification of Petitioner as a flight risk or a danger as dictum. *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004) ("A statement is dictum when it is made during the course of delivering a judicial opinion, but ... is unnecessary to the decision in the case and [is] therefore not precedential.") (citation modified). Disregarding that dictum, Petitioner has not had a meaningful bond hearing. And cutting against that dictum, Petitioner was paroled in 2025. (ECF No. 1 at 10.) "In general, '[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.'" *Noori v. LaRose, et al*., 2025 WL 2800149, at 13* (S.D. Cal. Oct. 1, 2025). *See also Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). The immigration judge's failure to recognize or discuss that implicit determination in her order (ECF No. 10-2), amplifies the risk of an erroneous determination. Moreover, the immigration judge's mandatory detention finding arguably deprives Petitioner of the ability to challenge his detention based on changed circumstances, *cf. Rodriguez Diaz*, 53 F.4th at 1202 (noting that detainees under 8 U.S.C. § 1226(a) are afforded administrative appellate rights and the ability to reassert challenges to detention based on materially changed circumstances), which would further exacerbate the risk of erroneous deprivation. This second *Matthews* factor tips in Petitioner's favor.

In the third *Matthews* factor, the court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." 424 U.S. at 335. The government's aim of "protecting the public from dangerous criminal aliens" and "increas[ing] the chance that, if ordered removed, the aliens will be successfully removed" are "interests of the highest order that only increase with the passage of time." *Rodriguez Diaz*, 53 F.4th at 1208 (quotations omitted). While section 1226(c)(1)(E) requires the detention of "any alien" who "is inadmissible under" 8 U.S.C. § 1182(a)(6)(A)(i) and "is charged with, is arrested for, [or] is convicted of, ... any ... crime that results in death or

serious bodily injury to another person[,]" 8 U.S.C. § 1226(c)(1)(E), courts have found that this provision ceases to apply when charges for an offense are dropped or dismissed. *See, e.g., Helbrum v. Williams Olson*, No. 4:25-CV-00349-SHL-SBJ, 2025 WL 2840273, at *5–7 (S.D. Iowa Sept. 30, 2025). "After charges are dismissed, it is no longer accurate to say that a person 'is charged with' [the applicable crime] (present tense)." *Helbrum,* 2025 WL 2840273, at *1. The statute's "use of the present tense is conspicuous and important." *Id.* at *5. "By using the present tense, section 1226(c)(1)(E)(ii) establishes that detention is mandatory only so long as the charges either remain pending or are resolved in a way that triggers one of the other clauses of the statute[,]" such as by a conviction. *Id.* at *5–6. Here, Petitioner's charges were dismissed many years ago. (ECF No. 1 at 11.) And Petitioner was readmitted to the United States between the time the charges were dismissed and his February 2026 detention. (ECF No. 1 at 10.) The government's valid interest in protecting the public from dangerous aliens in the abstract does not eclipse the specific liberty interest Petitioner presents in the facts and history of this case.

In sum, the *Matthews* factors tip toward the finding that the government action here constitutes an unconstitutional deprivation of Petitioner's liberty interest.

C. <u>Remedy</u>

Having concluded that Petitioner possesses a liberty interest that the government has unconstitutionally infringed upon, the court turns to the proper remedy. Petitioner prays for two remedies: immediate release or, in the alternative, a second bond hearing on the merits with the burden shifted to the government. (ECF No. 1 at 13.)

Courts have justified either immediate release or a prompt administrative detention hearing based on the specific facts each habeas petition presents. In *Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2230521, at *7 (E.D. Cal. Aug. 4, 2025), *converted to preliminary injunction sub nom*, 2025 WL 2411010, at *1 (E.D. Cal. Aug. 20, 2025), for example, the court ordered immediate release of an immigration detainee who had been in compliance with his conditions of release, even though he had incurred a misdemeanor arrest while on parole, in part because no charges were ever filed. In contrast, the court ordered a bond hearing in *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035, 2025 WL 2495767 (E.D. Cal.

Aug. 28, 2025), where the petitioner's records indicated numerous violations. Though petitioner in *Martinez Hernandez* offered explanations for the violations and disputed whether the violations occurred, the government's reliance on those violations was "not obviously pretexual." *Id*. at *12. As *Martinez Hernandez* noted:

> In similar circumstances, courts have refused to release the petitioners but have ordered timely bond hearings. *Carballo v. Andrews*, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025), citing *Perera v. Jennings, et. al,* No. 21-CV-04136-BLF, 2021 WL 2400981, at *5 (N.D. Cal. June 11, 2021); *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023 WL 2744397, at *6 (N.D. Cal. Mar. 31, 2023). "[A]llowing a neutral arbiter to review the facts would significantly reduce the risk of erroneous deprivation." *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *8 (N.D. Cal. July 17, 2025). Thus, the Court concludes that prompt, post-deprivation process is required here.

*Id*.

The court concludes here that immediate release is a better fit for the due process violation. "[U]nder deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations." *Liu v. Warden, Cal. City Det. Facility*, No. 26-CV-01057, 2026 WL 1243489, at *4 (E.D. Cal. May 6, 2026) (quoting *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020)). Once paroled, a pre-deprivation hearing is required by due process. *Medrano-Rocha v. Santacruz*, 817 F. Supp. 3d 871, 882 (C.D. Cal. 2026).

IV. <u>RECOMMENDATION</u>

For the reasons stated above, the court RECOMMENDS the following:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED; and

2. Respondents be directed to immediately release Petitioner.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l)(B). Within <u>fourteen (14) days</u> after being served with a copy of these findings and recommendations, a party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." <u>Objections, if any, shall not exceed fifteen (15) pages or include exhibits</u>. Exhibits may be referenced by document and page number if already in the

record before the court. Any pages filed in excess of the 15-page limit may not be considered. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1) should not be filed until entry of the district court's judgment.

IT IS SO ORDERED.

Dated: **July 28, 2026**

UNITED STATES MAGISTRATE JUDGE